UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LORI MICHELLE WESTON,<br><br>                              Plaintiff,<br><br>       v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                              Defendant. | Case No. 3:13-cv-05553-RJB-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for June 20, 2014 |

Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits be reversed and this matter be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On December 17, 2010, plaintiff filed an application for disability insurance benefits and another one for SSI benefits, alleging in both applications that she became disabled beginning December 31, 2008. <u>See</u> ECF #15, Administrative Record ("AR") 110. Both applications were denied upon initial administrative review on March 4, 2011, and on reconsideration on May 18,

REPORT AND RECOMMENDATION - 1

2011. See id. A hearing was held before an administrative law judge ("ALJ") on March 21, 2012, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 24-60.

In a decision dated April 12, 2012, the ALJ determined plaintiff to be not disabled. See AR 110-21. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on June 6, 2013, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner"). See AR 1; 20 C.F.R. § 404.981, § 416.1481. On July 16, 2013, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #3. The administrative record was filed with the Court on September 24, 2013. See ECF #15. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the Commissioner's final decision should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred in:

(1) failing to find her obesity and back pain to be severe impairments;

(2) evaluating the opinions of Daniel M. Neims, Psy.D., and Terilee Wingate, Ph.D.;

(3) failing to develop the record in regard to medical evidence from Lorin Boynton, M.D.;

(4) discounting plaintiff's credibility;

(5) assessing plaintiff's residual functional capacity; and

(6) finding plaintiff to be capable of both returning to her past relevant work and performing other jobs existing in significant numbers in the national economy.

For the reasons set forth below, the undersigned agrees the ALJ erred in evaluating the opinion

REPORT AND RECOMMENDATION - 2

of Dr. Neims and in developing the record in regard to the medical evidence from Dr. Boynton, and therefore in assessing plaintiff's residual functional capacity, finding her to be capable of performing both her past relevant work and other jobs existing in significant numbers in the national economy, and determining her to be not disabled.  Also for the reasons set forth below, however, the undersigned recommends that while defendant's decision should be reversed on that basis, this matter should be remanded for further administrative proceedings.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld.

REPORT AND RECOMMENDATION - 3

Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

I.      The ALJ's Evaluation of the Opinion of Dr. Neims and Evidence from Dr. Boynton

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

REPORT AND RECOMMENDATION - 4

draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

With respect to the opinion of Dr. Neims, the ALJ found in relevant part as follows:

REPORT AND RECOMMENDATION - 5

In December 2010, Daniel Neims, Psy, performed a Department of Social and Health Services (DSHS) psychological evaluation on the claimant (Ex 2F). The claimant appeared to have a depressed and anxious mood, and constricted affect (Ex. 2F/8). The claimant had slow, low and impeded speech, but was fully oriented and had fair eye contact (Ex. 2F/9). The claimant had intact memory, as she recalled three of three objects immediately, after a five-minute delay and 30-minute delay, and her digit span was six forward and four backward (Id). The claimant had intact concentration, as she correctly spelled "world" forwards and backwards and performed serial threes and sevens without error (Id). The claimant denied hallucinations and suicidal or homicidal ideation (Ex. 2F/11). The claimant did not have thought disorder in form or content (Ex. 2F/8). Dr. Neims diagnosed the claimant with depressive disorder, generalized anxiety disorder, and personality disorder (Ex. 2F/4).

. . .

. . . Dr. Neims . . . opined the claimant was disabled from work for six months or longer, and gave the claimant a global assessment of functioning (GAF) score of 50, indicating serious impairment in functioning (Ex. 2F/4, 5). However, he opined the claimant had marked limitations in her ability to communicate and perform effectively in a work setting with public contact, but had moderate limitations or less in all other cognitive and social factors (Ex. 2F/5). The opinion is given little weight because the doctor's opinion is inconsistent. Although Dr. Neims opined the claimant could not work, he only gave the claimant moderate limitations in all cognitive and social factors with the exception of her ability to interact with the public. Furthermore, the opinion is inconsistent with his clinical findings as he found the claimant had intact memory and concentration, and did not have a thought disorder in form or content. The opinion is also inconsistent with the balance of the medical evidence.

AR 115-16, 118. Plaintiff argues the ALJ did not provide valid reasons for rejecting Dr. Neims' opinion. The undersigned agrees.

First, as plaintiff points out, Dr. Neims' opinion is not necessarily internally inconsistent merely because he found a marked limitation only in the area of communicating and performing effectively in a work setting with public contact. It is entirely possible that the other areas in which Dr. Neims found a moderate limitation – which as plaintiff also points out is defined by the evaluation form Dr. Neims completed as a "[s]ignificant in[ter]ference" in the ability to perform on a normal day-to-day work basis – alone or in combination with the one marked

REPORT AND RECOMMENDATION - 6

limitation could lead to an inability to perform full-time gainful employment. AR 298. The ALJ fails to explain why that is not the case here, or why his opinion as to the internal consistency of those limitations is more valid than that of Dr. Neims, who apparently saw no inconsistency. See McBrayer v. Secretary of Health and Human Services, 712 F.2d 795, 799 (2nd Cir. 1983) (ALJ cannot arbitrarily substitute own judgment for competent medical opinion).

The moderate to marked limitations Dr. Neims assessed, furthermore, are not necessarily inconsistent with having intact memory and concentration and exhibiting no thought disorder, but instead could very well be related to or caused by the less than normal clinical findings the mental status he performed produced. For example, the moderate limitation in maintaining appropriate behavior, the moderate limitation in communicating and performing effectively in a work setting with limited public contact and the marked limitation in communicating and performing effectively in a work setting with public contact, certainly may be consistent with the issues in speech, motor behavior and activity, affect, and level of consciousness, comprehension, mood, affect, insight, and impulse control indicated by the mental status examination results, as well as the symptoms of anxiety and depression Dr. Neims indicated he observed. See AR 297-98, 302-04.

Finally, the undersigned agrees with plaintiff that it was insufficient for the ALJ to state merely that Dr. Neims' opinion was inconsistent with the balance of the medical evidence in the record. See Embrey v. Bowen, 849 F.2d 418 421 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required."). It is true that, as noted above, the ALJ can resolve conflicts in the medical evidence "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

REPORT AND RECOMMENDATION - 7

stating his interpretation thereof, and making findings," and also may draw inferences "logically flowing from the evidence." Reddick, 157 F.3d at 725.  Here, though, while the ALJ summarized the medical evidence in the record prior to rejecting Dr. Neims' opinion, he gave no indication as to what specific evidence he found to be inconsistent therewith. See AR 115-18.

There is significant probative evidence in the record, furthermore, that provides at least some support for the severity of limitation Dr. Neims found.  As noted by plaintiff, counseling records reveal her mental health symptoms continued to wax and wane, reaching a severe level on a number of occasions (see AR 293, 338, 343, 345-46, 352, 354, 357, 359, 361, 363, 365, 367, 370, 372, 374, 376, 378, 383, 385, 387), and as recent as late March 2012, one of her mental health therapists noted that her symptoms were "still present" and would be expected to remain so "for several years without intense therapeutic treatment." AR 406.  While the undersigned disagrees with plaintiff that Dr. Neims' evaluation report necessarily indicates her symptoms would continue even with treatment, the mental health therapist's comment does suggest such could be the case.[2]  The ALJ, though, gave no indication as to what weight, if any, he assigned to either the counseling notes or the therapist's opinion. See Turner v. Commissioner of Social Sec., 613 F.3d 1217, 1223-24 (because Commissioner's regulations treat public and private welfare

---

[2] The ALJ took evidence of plaintiff's lack of compliance with taking prescribed medication to be an indication. AR 117-18.  While there is evidence of non-compliance in the record (see AR 299-300, 339, 341,  345, 347-48, 354, 356, 358-59, 361, 363, 374, 376, 379-81, 384, 386, 388), there also is evidence that plaintiff's non-compliance was due to ineffectiveness, significant medication side effects and/or inability to afford it (see AR 315, 331, 340, 343, 349-51, 365, 378).  The ALJ, however, made no effort to determine whether this was a valid basis for not following prescribed treatment. See Carmickle v. Commissioner, Social Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (improper to discount credibility on the basis of failure to pursue treatment when claimant "has a good reason for not" doing so, such as lack of insurance coverage); Byrnes v. Shalala, 60 F.3d 639, 641 (9th Cir. 1995) (ALJ "must 'examine the medical conditions and personal factors that bear on whether [a claimant] can reasonably remedy' his impairment," before "basing a denial of benefits on noncompliance" (citations omitted); Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995) (benefits may not be denied due to failure to obtain treatment because of inability to afford it); SSR 96-7p, 1996 WL 374186 *7 (ALJ "must not draw any inferences" about claimant's symptoms and their functional effects from failure to follow prescribed treatment "without first considering any explanations" claimant "may provide, or other information in the case record, that may explain" that failure).

REPORT AND RECOMMENDATION - 8

agency personnel such as social workers as "other sources," testimony therefrom is considered lay testimony, which ALJ may expressly disregard for germane reasons).

An early June 2011 progress note from treating psychiatrist Lorin Boynton, M.D., also noted plaintiff's anxiety and depression were both "severe", and indicated her depression was a barrier to employment. AR 380.  In addition, although the record contains a mid-February 2012 follow-up note from Dr. Boynton, in which she referenced a prior comment from plaintiff's care coordinator that it appeared she was "capable of working," but had "a 'victim mentally' and at this stage" was "not willing to change this easily," it is not at all clear  Dr. Boynton agreed with that comment. AR 340.   For example, Dr. Boynton also noted plaintiff's care coordinator was going to work with her "to help with frustration tolerance and try and help her with getting to the bottom of her statement 'I can't work,'" and would "[r]e-consult as necessary." Id.  Nor did Dr. Boynton repudiate her previous indication that depression was a barrier to employment. See id.

As pointed out by plaintiff, though, the ALJ did not discuss or provide any analysis of this significant probative evidence, except to mention it briefly in her summary of the overall medical evidence in the record. See AR 116.  Plaintiff argues the ALJ should have obtained a medical source statement from Dr. Boynton.  The undersigned agrees further development of the record in regard to Dr. Boynton's opinion regarding plaintiff's ability to work should have been undertaken.  An ALJ's duty to further develop the evidence in the record is triggered when it "is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001).  Further, when medical opinion source evidence is inadequate to determine disability, that source will be re-contacted to seek clarification when the opinion "contains a conflict or ambiguity that must be resolved" or "does not contain all the necessary information." 20 C.F.R. § 404.1512(e)(1), § 416.912(e)(1).  Given the ambiguities contained in Dr. Boynton's

REPORT AND RECOMMENDATION - 9

treatment notes concerning her opinion as to whether plaintiff could work, further development of that evidence was warranted.

II.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id.  If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.  It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.  However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ found plaintiff had the residual functional capacity to perform "**a full range of work at all exertional levels**" and "**simple, routine tasks and instructions**," but without any

REPORT AND RECOMMENDATION - 10

"**direct public contact**." AR 114 (emphasis in original).  Plaintiff argues, and the undersigned agrees, that in light of the errors the ALJ committed in evaluating the medical evidence in the record discussed above, it cannot be said at this time that the ALJ's RFC assessment is supported by substantial evidence.

III.   The ALJ's Step Four Determination

At step four in this case, the ALJ found plaintiff to be capable of performing her past relevant work as a janitor, which "**does not require the performance of work-related activities precluded by [her] residual functional capacity**." AR 119 (emphasis in original).  But again because the ALJ erred in evaluating the medical evidence in the record discussed above, and therefore in assessing plaintiff's RFC, the undersigned agrees the ALJ's step four determination also cannot be said to be supported by substantial evidence.

IV.   The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See

REPORT AND RECOMMENDATION - 11

Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted).  The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Here, the ALJ found in the alternative that plaintiff was capable of performing other jobs existing in significant numbers in the national economy, based on the testimony of the vocational expert made in response to a hypothetical question based on an individual with the same age, education, work experience, and residual functional capacity as plaintiff. See AR 120.  Once more, however, given the ALJ's errors in evaluating the above medical evidence in the record and thus in assessing plaintiff's RFC, the undersigned agrees the alternative finding at step five cannot be said to be supported by substantial evidence at this time as well.

V.     This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

REPORT AND RECOMMENDATION - 12

(1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical evidence in the record concerning plaintiff's mental impairments and limitations, and therefore in regard to plaintiff's RFC and ability to perform both her past relevant work and other jobs existing in significant numbers in the national economy, remand for further consideration thereof is warranted.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court reverse defendant's decision to deny benefits and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **June 20, 2014**, as noted in the caption.

DATED this 4th day of June, 2014.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13